## ATWOOD *v.* THE UNION MUTUAL FIRE INSURANCE COMPANY.

Where the charter of a mutual fire insurance company provided that the directors should determine the amount to be insured, not exceeding one half the value of personal property; and an article in the by-laws provided that, in case of loss, the insured should deliver to the secretary of the company, on oath, a particular account of the property lost, and the value thereof, at the time of the loss; and another article provided that the directors should, as soon as might be after a loss, proceed and determine the amount of the same; and a policy was issued upon the merchandize of the plaintiff, by which the charter and by-laws were made a part of the same; and subsequently all the goods on hand, of the insured, were destroyed by fire, but they were a much less amount than the sum named in the application—*held,* that the valuation, at the time of the loss, should be the basis upon which the liability of the company should be fixed, and that, consequently, the defendants were liable for one half of the goods on hand at the time of the fire, and not for one half of the whole valuation at the time of issuing the policy.

ASSUMPSIT, on a policy of insurance, issued by the defendants to B. Grant & Co., on the 30th day of October, 1849, and by them duly assigned to the plaintiff.

The insurance was for the sum of $1,400, on merchandize, set forth in the application for insurance, to be of the value of $3,000.

The property was destroyed by fire April 3, 1851, and due notice of the loss was given to the defendants.

The defendants confessed the plaintiff's cause of action to the amount of $840, as set forth in their plea and confession, and as to the rest pleaded the general issue.

It was agreed between the parties, for the purposes of the case, that, at the time of the loss, the merchandize in the store where it was kept for the purposes of sale, was of the value of $1,680, all of which was destroyed, and was the property of the plaintiff.

By the terms of the policy, the application was made a part of it, and the defendants promised to pay the sum insured to Grant & Co., or their assigns, " according to the

provisions of the charter and the by-laws of the corporation."

The fifth section of the charter provides, among other things, that the directors shall determine the rates of insurance, the sum to be insured not exceeding three-fourths the value of any building, and one half the value of personal property, and the sum to be deposited for the insurance thereof.

The fourteenth article of the by-laws provides that " in case of loss on either class of property, the insured shall, within thirty days, deliver to the secretary of the company a particular account, on oath, of the property lost or damaged, and the value thereof at the time of the loss; and shall state whether he was sole owner of the same at the time of the loss; and if it is now, was at the time of its insurance, or has since been encumbered by mortgage or otherwise; and whether any insurance has subsisted in any other office upon the same, since insurance was effected at this office; the cause or occasion of the fire, as far as it is known, and the value of such parts as remain; until which shall be done the amount of such loss, or any part thereof, shall not be payable."

A part of the fifteenth section of the by-laws is as follows: " Upon notice of loss being given, in the manner provided by the preceding section, the directors shall proceed, as soon as may be, to ascertain and determine the amount thereof, and shall settle and pay the same, within three months after such notice."

It was agreed between the parties that the opinion of this court should be taken as to whether the defendents were liable to pay the whole amount for which the property was insured, or only one half the value of the property insured at the time of the loss. And the case was transferred from the common pleas accordingly.

*H. A. & A. H. Bellows,* for the plaintiff.

This policy is to be regarded as a valued policy, and, in the absence of fraud, the property is taken to be worth $3,000. And this is conclusive between the parties. 2 Phil. on Ins. 3, 7, 19; 2 Greenl. on Ev. § 381; *Harris* v. *Eagle Ins. Co.* 5 Johns. 368; *Fuller* v. *Boston Mut. Fire Ins. Co.* 4 Met. 206.

We hold that the plaintiff is entitled to the whole sum of $1,400, if the loss was to that amount.

The provision in the fifth section of the charter, authorizing the directors to determine the sum to be insured, not exceeding three-fourths the value of the buildings and one half the value of the personal property, relates to the value at the time of issuing the policy; and that, having been once issued correctly, is not afterwards modified by this provision; if it were, the contract would be constantly fluctuating, according to the changes in the value of the property.

There is no provision in the charter, by-laws, policy or application, for any revision of the valuation, or any condition annexed to the payment of the whole sum insured, or limiting the liability of the defendants to one half the value at the time of the loss.

This case, then, must be governed by the general principles of insurance, in view of which this contract was made. The general doctrine is well settled, that the valuation has respect to the commencement of the risk, upon the ground that the value is constantly shifting, as in case of a ship by wear and decay; and because, too, that the loss may happen directly after the insurance. 2 Phil. on Ins. 41, 42, and note a, and cases cited; also 43, 44. As to diminution of insurable interest, by withdrawing from the risk part of the goods specifically valued, see 2 Phil. on Ins. 65.

But diminution by wear and decay of a ship, sails and and rigging and consumption of provision, &c., does not diminish the insurable interest. *Lewis & a.* v. *Rucker*, 2 Burr. 1171.

The same doctrine is applied to mutual insurance compa-

nies, where they are limited to insuring a portion only of the value of the property. *Borden & Wife* v. *Hingham Mut. Fire Ins. Co.* 18 Pick. 523; *Fuller* v. *Boston Mut. Fire Ins. Co.* 4 Met. 206; *Holmes & a.* v. *Charlestown Mut. Fire Ins. Co.* 10 Met. 211; *Post* v. *Hampshire Mut. Fire Ins. Co.* 12 Met. 555.

The provision in the by-laws, articles 14 and 15, have no such effect as the defendants claim. They contain limitations, but provide for cases of partial loss and against fraud; they apply equally to buildings and goods, as much to change by depreciation of value as by the withdrawing of a part of the property.

In regard to buildings, we have seen in the cases cited, that the changes in the value do not affect the contract. *Borden & Wife* v. *Hingham Mut. Fire Ins. Co.* 18 Pick. 523, and other cases.

In fact, these provisions in respect to proof of loss are found in all fire policies, mutual and stock, and are old provisions. 2 Phil. on Ins. 515, 520.

*Fowler, George & Foster,* for the defendants.

The contract of insurance is one of indemnity. 3 Kent's Com. 370; *Wilson* v. *Hill*, 3 Met. 66, 70; *Carpenter* v. *Providence and Washington Mut. Fire Ins. Co.* 16 Peters 495.

The indemnity secured by a contract of insurance may be either entire or partial; and whether entire or partial depends upon the terms of the contract, or the disability of the insurers, or both. *Post* v. *Hampshire Mut. Fire Ins. Co.* 12 Met. 555.

Policies of insurance are specific agreements, by the insurers, to indemnify the insured against such loss or damage as they may sustain on the property named in the policies, within the terms and limitations of the policies themselves. 3 Kent's Com. 370; 3 Met. 66; 16 Peters 495.

The charter and by-laws annexed to and referred to in

the policy, form a part of the contract of insurance, and have the same effect as if recited in the body of the policy itself. *Duncan* v. *Sun Fire Ins. Co.* 6 Wend. 488; *Holmes* v. *Charlestown Mut. Fire Ins. Co.* 10 Met. 211; *Murdock* v. *Lane*, 2 Comstock 210; *Houghton* v. *Manufacturers' Mut. Fire Ins. Co.* 8 Met. 114; *McMahon* v. *Portsmouth Mut. Fire Ins. Co.* 2 Foster's Rep. 15.

We contend, then,—I. That by the terms of the policy itself, taken in connection with the provisions of the fifth section of the act of incorporation, and the 14th and 15th articles of the by-laws, annexed to and constituting a part of the policy, the liability of the company in the present case is clearly limited to one half the value of the property destroyed by the fire. The company could do no more than partially indemnify the insured by the terms of their charter, and they did not undertake to do any thing more.

The company, by the policy, promise, according to the provisions of the charter and by-laws, to pay the sum of $1,400, within three months after the property named shall be destroyed by fire, and due notice thereof given. The fifth section of the charter prohibits the company to insure more than one half the amount of personal property. Less than one half the amount represented to be on hand was insured in this case. Article 14th of the by-laws requires the insured, in case of loss, to deliver to the secretary, within thirty days, a particular account, on oath, of the property lost or damaged, and the value thereof at the time of the loss, and the value of such parts as remain; and until this is done no part of the loss is payable. And article 15th provides that, upon notice being given, the directors shall proceed to ascertain and determine the amount of the loss, and settle and pay the same within three months.

Taking the whole together, it seems to us perfectly clear that the only fair and reasonable construction of the policy is, that the company promise to pay the insured the sum of $1,400, within three months after his property insured shall

be destroyed by fire, and the required notice thereof given, provided that sum shall not exceed one half the amount of the property on hand at the time of the fire, or of the whole value of the property actually destroyed at that time.

The reference to the charter and by-laws in the policy, in connection with the changeable character of the property insured, amounts to an express reservation of the right to have the property valued anew at the time of the loss, and takes the case out of that class of cases where, from the terms of the policy and the permanent character of the property itself, the value named in the policy has been holden to be taken as the fixed value. *Post* v. *Hampshire Mut. Fire Ins. Co.* 12 Met. 555; *Liscomb & a.* v. *Boston Ins. Co.* 9 Met. 210; *Holmes* v. *Charlestown Mut. Fire Ins. Co.* 10 Met. 211; *Egan* v. *Mut. Ins. Co.* 5 Denio 326; *Hoffman* v. *Webster Mut. Fire Ins. Co.* 1 La. Ann. Rep. 216.

II. The construction for which the plaintiff contends, or any other than which we have given the contract, would defeat and nullify completely the intention of the Legislature in limiting the risks assumed by the company to one half the value of personal property. The design was to prevent frauds and negligence, by making it an object for the owner to guard his property from exposure to fire, and by this increased security to induce honest persons, who are men of property, to become members, and who will be able to contribute in cases of loss. *Holmes* v. *Charlestown Mut. Fire Ins. Co.* 10 Met. 215.

The principle sought to be established by the provision of the fifth section of the charter, is to make the insured and the insurers alike interested in preserving the property insured, by throwing half the risk of loss on each, and furnishing the strongest possible inducement to the insured, in case of fire, to exert all his energies to secure something from the devouring element, by giving him the whole benefit of all the property saved, which was at his own risk. But adopt the construction of the plaintiff, and the principle be-

gins to fail the moment the insured sees fit to reduce his stock below the amount on hand at the time the insurance was effected, and entirely ceases the moment he chooses to reduce it to the amount of the insurance.

III. There is no reason for restricting the power of the company as to the proportionate value of property to be insured at the time of issuing the policy, which is not equally strong and conclusive, at all times, during the continuance of the policy; and the manifest intention of the Legislature and the true construction of the policy of insurance are, that the company shall never have at risk more than one half the actual value of the property on hand at any time during the continuance of the policy.

If the position of the plaintiff be correct, it will hold good, however low the stock may be reduced; and we see not why, if the plaintiff had sold out all but five dollars worth of his whole stock, and that had been burned, he might not have insisted on the company's paying him the whole amount of his insurance with just as much propriety as he now does. The injustice of the claim might have been more glaring, but it would have been no more a violation of the intention of the Legislature, in granting the defendants' charter, or of what seems to us the fair, natural, and obvious construction of the defendants' contract.

EASTMAN, J. The only question presented by this case is, whether the plaintiff shall recover $1,400, the whole amount of the insurance, or $840, the one half of the goods on hand at the time of the loss, the insurance being upon merchandize only.

It is contended by the plaintiff that, inasmuch as a valuation was placed upon the property, at the time of the insurance, the defendants are not at liberty to show that the stock in trade has since been reduced, and that at the time of the fire it was actually of the value of $1,680, and no more.

There are cases which, to some extent, go to sustain the plaintiff's position, and they proceed upon the principle that the company, having once fixed a valuation upon the property, must be held, in the absence of fraud, to be governed thereby. *Fuller* v. *The Boston Mut. Fire Ins. Co.* 4 Met. 206, is a case of the kind. In that case, which was an insurance upon buildings, one of the regulations of the company was, that the president should examine the premises before the insurance and fix the value, and it appeared that he made an examination, and that the amount proposed by the assured was agreed upon and fixed. It was held that, after such an agreement, the company could not, in the absence of fraud, be heard to say that there was an over-valuation. *Shaw*, C. J., who delivered the opinion of the court, says that such a valuation is, in the highest sense, a valuation by mutual agreement. And he remarks that the question is, whether a valuation thus deliberately and carefully made by mutual agreement, as a part of the original negotiation, when each party is independent of the other, and at liberty to contract or not, as they are or not respectively satisfied with the terms, shall, in the absence of all frand, collusion and misrepresentation, be taken as the best evidence of the actual value of the premises insured. And the learned chief justice, after discussing the question, arrives at the conclusion that it is not only the best evidence of the value, but that such a valuation is, under the circumstances, conclusive upon the parties.

To the same effect are *Borden & Wife* v. *Hingham Mut. Fire Ins. Co.* 18 Pick. 523, *Holmes* v. *Charlestown Mut. Fire Ins. Co.* 10 Met. 211.

But in *Post* v. *Hampshire Mut. Fire Ins. Co.* 12 Met. 555, where a regulation of the company provided that a re-valuation might be had, it was held that the assured could recover only the proportion of the value at the time of the fire.

The doctrine of the Massachusetts cases appears to be this: that where the valuation, at the time of the issuing

of the policy, is made under such circumstances as to assume the character of a deliberate and mutual agreement fixing the value, such valuation will, in the absence of fraud and of any provision in the charter or by-laws for a re-valuation, be the best evidence of the value, and conclusive upon the parties.

In the case before us, the defendants promised to pay the sum insured, according to the provisions of the charter and the by-laws of the corporation. The charter and by-laws formed a part of the policy, and the contract was made having them for its basis. In the charter and by-laws there is no express provision for a re-valuation; but by the fifth section of the charter, it is provided that the directors shall determine the sum to be insured *not exceeding* three-fourths the value of any building and one half the value of personal property. By the fourteenth article of the by-laws, it is provided that, in case of loss, the insured shall deliver to the secretary of the company, within thirty days, a particular account, on oath, of the property lost or damaged, *and the value thereof at the time of the loss;* and by the fifteenth article the directors are required to proceed as soon as may be, after notice of the loss, and determine the amount thereof.

Under these provisions, we think that the representation made by the applicant, at the time of the insurance, that the property was worth $3,000, and the issuing a policy upon that representation, cannot have that binding and conclusive force upon the company, that shall prohibit them from showing the actual amount of goods the plaintiff had on hand at the time of the fire. The charter expressly provides that not more than one half the value of personal property shall be insured. Can the directors make a contract that shall bind the company, which is in violation of an express provision of the charter? And can a member, who has made the charter the basis of the contract, set up an agreement between him and the directors that shall override the

charter? The stock in a business store is constantly changing, and of this the parties are well aware. There are, probably, not two days in a year when the insured has the same amount of goods on hand. There can, necessarily, from the very nature of the business, be nothing fixed and certain about it; and a contract of insurance upon merchandize of this kind must be understood to have been made with reference to this well-known fact. And taking this charter and by-laws together, we think that the true construction of the contract between these parties should be, that the loss should be estimated according to the amount of goods on hand at the time of the fire.

We think, also, that even upon the principles of *Fuller* v. *Boston Mut. Fire Ins. Co.* and *Borden & Wife* v. *Hingham Mut. Fire Ins. Co.* before cited, the plaintiff could not recover. The policies, in those cases, were issued upon buildings, which, for the short time of an ordinary policy of insurance, may be considered as having a somewhat fixed character and value. This policy was issued upon a stock of goods, which, from the very nature of the articles, must be constantly changing, both in character and amount. Those authorities, also, taken in connection with *Post* v. *Hampshire Mut. Fire Ins. Co.*, recognize the doctrine of a revaluation at the time of the fire, provided the charter and by-laws sanction it. And, we think, that the charter and by-laws, in this case, are sufficient to authorize such a course to be taken.

It appears to us, also, that, to sustain the position of the plaintiff, would be contrary to one of the fundamental principles of mutual insurance, which is that the insured shall assume a large part of the risk himself, as a guarantee against fraud and negligence. If the doctrine contended for be correct, then may the assured reduce his stock, even down to the amount insured, and still recover for the whole; and thereby would not only the protection against fraud be

destroyed, but the charter, as we conceive it, be directly violated.

We have no doubt that the true construction of this policy, taken in connection with the charter and by-laws, is, that the company should never have at risk more than one half of the stock of goods on hand. If the whole stock should be consumed, the plaintiff would recover one half the amount, not exceeding his insurance. If only half should be consumed, he would recover for that half, provided it did not exceed the whole insurance, and the half saved would belong to him also. Such, we think, to be the true rule, and that, consequently, the defendants are liable for only the $840.

Judgment should, therefore, be entered for the plaintiff for $840, with costs up to the time of the confession; and the defendants should recover costs after the confession.